# EXHIBIT
# A

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA


- - -

WANDA JAMES SPEIGHT    :   NO. 07-0890
                       :

     vs.               :
                       :

CAPMARK FINANCE, INC.  :
     and               :
WILLIAM F. ALDINGER, III:


- - -

July 9, 2008

Philadelphia, Pennsylvania

- - -



Oral deposition of JOHN ZURICK,
taken in the offices of Salmanson &
Goldshaw, 1500 JFK Boulevard, Suite 1230, on
the above date, commencing at or about 10:27
a.m., before Janice M. Leaman, a Notary
Public and an Approved Reporter of the
United States District Court for the Eastern
District of Pennsylvania.

- - -




KAPLAN, LEAMAN & WOLFE

Registered Professional Reporters

325 Chestnut Street, Suite 909

Philadelphia, Pennsylvania 19106

(215) 922-7112

1 termination paperwork, anything related to the

2 termination  --

3      A.      I was present at the meeting.

4      Q.      Were you involved at all in the

5 preparation of Miss Speight's offer of severance in

6 exchange for a release?

7      A.      I don't recall.

8      Q.      How did you learn that Miss Speight's

9 employment was being terminated?

10      A.      It was either by Mark McCool or Jon

11 Fogle.

12      Q.      You don't recall specifically having any

13 conversations with Mr. McCool prior to Miss

14 Speight's termination; correct?

15      A.      Correct.

16      Q.      Do you recall what reasons were being

17 given for Miss Speight's termination?

18      A.      I believe it was due to the behavior at

19 the meeting and another incident which doesn't --

20 which I don't recall at this moment.

21      Q.      So, it's your best recollection that the

22 termination was based on two specific incidents,

23 the meeting, and another incident?

24      A.      Yes.

25      Q.      Do you generally provide advice as to

1 whether performance issues merit someone's

2 termination as opposed to some lesser sanction?

3    A.    Yes, I do.

4    **Q.**    And did you do that in Wanda's case?

5          Actually, let me clarify that: I said

6 do, present tense, we should actually clarify

7 whether that was true at the time of Miss Speight's

8 termination?

9          While you were at GMAC, did you

10 provide advice as to whether someone's termination

11 merited or someone's performance or behaviors

12 merited termination?

13    A.    I did my best to do that.

14    **Q.**    Was that part of your job

15 responsibilities?

16    A.    Yes.

17    **Q.**    Were you asked your opinion in Miss

18 Speight's case?

19    A.    I don't recall.

20    **Q.**    Do you remember whether you gave any

21 advice in Miss Speight's case?

22    A.    I remember not disagreeing with the

23 decision.

24    **Q.**    Do you remember whether you shared that

25 view with people at the time?

1 termination?

2    A.    Yes.

3    **Q.**    And what do you recall him saying in

4 that regard?

5    A.    This E mail, in addition to what had

6 happened in the prior meeting, were the reasons for

7 the decision to terminate.

8    **Q.**    And that's what Mr. McCool conveyed to

9 you?

10   A.    Yes.

11   **Q.**    And did he convey to you that he wanted

12 to terminate her as a result of those two specific

13 incidents?

14   A.    Yes.

15   **Q.**    Did he convey to you what Mr. Lipson's

16 views, if any, were as to whether Miss Speight

17 should be terminated?

18   A.    I don't recall.

19   **Q.**    Is it your understanding that it was Mr.

20 McCool's decision to terminate Miss Speight?

21   A.    Yes.

22   **Q.**    Did Mr. McCool seek your advice as to

23 whether the two incidents merited her termination?

24         MR. EAGLES: I believe he's answered

25 that question already.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WANDA JAMES SPEIGHT,    :

       Plaintiff,    :

    v.    :    Civil Action No. 07-cv-0890

CAPMARK FINANCE INC.    :
    and
WILLIAM F. ALDINGER, III    :

       Defendants.    :

    :

## DEFENDANT CAPMARK FINANCE INC.'S SUPPLEMENTAL ANSWERS AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant Capmark Finance Inc. ("Defendant"), by and through its attorneys, hereby answers and objects to Plaintiff's First Set of Interrogatories in the above-referenced matter as set forth below.  Defendant reserves the right to supplement or amend its answers and objections as may be required under Rule 26(e)(1) of the Federal Rules of Civil Procedure.

## GENERAL OBJECTIONS

1.    Defendant objects generally to the instructions, definitions, and specific requests contained in Plaintiff's First Set of Interrogatories to the extent the impose obligations upon Defendant beyond those permitted by the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the Eastern District of Pennsylvania.

2.    Defendant objects generally to Plaintiff's First Set of Interrogatories to the extent that it seeks information that is subject to one or more privileges including, but not limited



EXHIBIT
P-3
28-08
PENGAD 800-631-6989

to, the attorney-client privilege, or seeks information that contains or constitutes attorney work

product or was prepared in anticipation of litigation.

   3. Defendant objects generally to answering Plaintiff's First Set of

Interrogatories to the extent that it seeks information that is confidential, proprietary or sensitive

in nature to Defendant or its current or former employees, without the execution of an

appropriate stipulation of confidentiality.

   Defendant incorporates its general objections into each of its objections to

specific interrogatories below.

## OBJECTIONS AND ANSWERS TO SPECIFIC INTERROGATORIES

**Interrogatory No. 1**

**Please describe in detail each and every legitimate non-discriminatory reason that you
contend motivated the termination of Ms. Speight.**

**Objections and Answer:**  Ms. Speight's employment was terminated because of her

unprofessional, uncooperative, and disrespectful conduct.

**Interrogatory No. 2**

**Please identify (as defined above) any employee of Capmark Finance Inc. ("CFI") or
GMAC Commercial Mortgage Corporation ("GMACCM") who has refused to personally
sign, initial or otherwise verify risk ratings performed with respect to a loan or loans, and
specify whether each such employee was subject to any warning, reprimand, discipline or
termination arising in whole or in part from such refusal.**

**Objections and Answer:**  Defendant objects to Interrogatory No. 2 on the grounds that it is

overly broad, unduly burdensome, and seeks information that is not relevant to the claims or

defenses of any party or to the subject matter of the Civil Action, nor reasonably calculated to

lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing

objections, Defendant is not aware of any employee, other than Ms. Speight, who has refused to

prepare or to verify a risk rating with respect to a particular loan or portfolio of loans.

**Interrogatory No. 3**

**Please identify (as defined above) each and every African-American employee employed by CFI who possessed an equivalent or superior rank to Ms. Speight at the time of her termination.**

**Objections and Answer:** Defendant objects to Interrogatory No. 3 on the grounds that it is overly broad, unduly burdensome, and seeks information that is not relevant to the claims or defenses of any party or to the subject matter of the Civil Action, nor reasonably calculated to lead to the discovery of admissible evidence. Defendant objects further to this interrogatory on the grounds that the phrase "equivalent or superior rank" is vague and ambiguous. Subject to and without waiving the foregoing objections, Defendant states that the following African American employees held an equivalent or higher title than Ms. Speight at the time of termination: Wayne Harris, SVP/MD Equity Asset Management; Jacqueline Brady, SVP/MD – Leveraged Finance; and Mark Aggrey, Sr. Dir., IT Business Relations.

**Interrogatory No. 4**

**Please identify (as defined above) each and every African-American employee ever employed by GMACCM Global Servicing or CFI Global Servicing who possessed an equivalent or superior rank to the rank possessed by Ms. Speight at the time of her termination.**

**Objections and Answer:** Defendant objects to Interrogatory No. 4 on the grounds that it is overly broad, unduly burdensome, and seeks information that is not relevant to the claims or defenses of any party or to the subject matter of the Civil Action, nor reasonably calculated to lead to the discovery of admissible evidence. Defendant objects further to this interrogatory on the grounds that the phrase "equivalent or superior rank" is vague and ambiguous. Subject to and without waiving the foregoing objections, Defendant is not aware of any employee in the Global Servicing Department who has held the same or a higher title than Ms. Speight held at the time of her termination.

3

**Interrogatory No. 5**

**Please describe in detail each and every basis for your denial in Paragraph 19 of your Answer that "Ms. Speight continued to diligently perform all of the work to which she was assigned at the same level of performance that she had demonstrated previously."**

**Objections and Answer:**  Ms. Speight displayed a poor attitude and lack of cooperation in a meeting concerning the integration of her group into Servicing.  Ms. Speight also communicated with Mr. McCool in a disrespectful manner regarding her unwillingness to perform a task that was assigned to her group.

**Interrogatory No. 6**

**Please describe in detail each and every basis for your denial in Paragraph 41 of your Answer that Ms. Speight was laid off from GMACCM within the meaning of the Plan as of March 2006 when GMACCM ceased to exist.**

**Objections and Answer:**  In March 2006, GMACCM continued to exist.  By way of further response, in March 2006, GMAC Commercial Holding Corp. changed its name to Capmark Financial Group Inc., which had no impact on Ms. Speight's employment status.  In May 2006, GMACCM changed its name to Capmark Finance, Inc., which also had no impact on Ms. Speight's employment status.

**Interrogatory No. 7**

**Please describe in detail the basis for your denial of any other allegation of the Complaint which you deny in whole or in part in your Answer.**

**Objections and Answer:**  Defendant objects to Interrogatory No. 7 on the grounds that it is overly broad, unduly burdensome, and seeks information that is protected by the work product doctrine.

**Interrogatory No. 8**

**Please describe in detail all of the facts that you contend support the affirmative defenses set forth in your Answer.**

**Objections and Answer:** Defendant objects to Interrogatory No. 8 on the grounds that it is overly broad, unduly burdensome, and seeks information that is protected by the work product doctrine.

**Interrogatory No. 9**

**Please identify (as defined above) any person or persons who assumed Ms. Speight's job duties in whole or in part following her termination.**

**Objections and Answer:** Defendant objects to Interrogatory No. 9 on the grounds that is overly broad and unduly burdensome to the extent that it seeks the identification of "any" person who assumed any "part" of Ms. Speight's job duties following her termination.  Subject to and without waiving the foregoing objections, Donald Irwin initially assumed many of Ms. Speight's former duties.  After Mr. Irwin resigned, E. Anthony Lauerman assumed many of Ms. Speight's former duties.  Mr. Irwin is white and held the title of Vice President – Asset Manager during the time period in which he assumed Ms. Speight's former duties.  Mr. Lauerman is white and has held the titles of Senior Vice President and Senior Vice President – Structured Asset Management during the time period in which he has assumed Ms. Speight's former duties.

**Interrogatory No. 10**

**Please identify each person who played a role in Ms. Speight's termination, and describe in detail the role that each individual played.**

**Objections and Answer:** Michael Lipson recommended and approved the termination of Ms. Speight's employment.  Mr. McCool concurred with Mr. Lipson's recommendation and informed Ms. Speight of her termination.  Mr. McCool also discussed the decision with John Zurick.  Mr. Lipson consulted with Linda Pickles about the decision.

**Interrogatory No. 11**

**Please identify (as defined above) each employee terminated by, or at the direction of Mark McCool during his employment with GMACCM or CFI.**

**Objections and Answer:** Defendant objects to Interrogatory No. 11 on the grounds that it is overly broad, unduly burdensome, and seeks information that is not relevant to the claims or defenses of any party or to the subject matter of the Civil Action, nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Defendant states that the following individuals were terminated by Mr. McCool or at his direction for misconduct or performance-related reasons:

| Name | Race | Last Title |
|------|------|------------|
| Bryan Pollack | White | VP-CMBS Investor Reporting |
| Madeline O'Brien | White | Sr. Administrative Assistant |
| Kevin Mechalas | White | CMBS Reporting Analyst |
| Leonard Mudlock | White | CMBS Reporting Analyst |
| Gary Garvin | White | Funds Application Administrator |
| Nicole Barrett | African American | Investor Reporting Administrator |

**Interrogatory No. 12**

**Please identify (as defined above) every African American employee hired by or at the direction of Mark McCool during his employment with GMACCM or CFI.**

**Objections and Answer:** Defendant objects to Interrogatory No. 12 on the grounds that it is overly broad, unduly burdensome, and seeks information that is not relevant to the claims or defenses of any party or to the subject matter of the Civil Action, nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Mr. McCool is not generally involved in hiring decisions with the exception of decisions relating to positions that report directly to him and certain management-level positions

within his operational area in Servicing.  By way of further response, Mr. McCool does not recall

directly hiring any African American employee.

**Interrogatory No. 13**

**Please identify (as defined above) each individual who played any role in denying Ms. Speight's contingent award(s), and describe in detail the role that such individual played.**

**Objections and Answer:**  Morgan Earnest made the decision to deny Ms. Speight's claim for

contingent awards.  By way of further response, Capmark received advice from counsel relating

to the decision.

**Interrogatory No. 14**

**Please describe in detail the procedures that have existed from January 1, 2004 to the present for performing risk rating of loans at CFI or GMACCM, including but not limited to any procedures, expectations or requirements set forth by the Credit Department.**

**Objections and Answer:**  Defendant objects to Interrogatory No. 14 on the grounds that it is

overly broad, unduly burdensome, and seeks information that is not relevant to the claims or

defenses of any party or to the subject matter of the Civil Action, nor reasonably calculated to

lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing

objections, Defendant will produce documents containing responsive information.


Michael I. Banks (I.D. No. 35052)
Michael J. Eagles (I.D. No. 82641)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103
215.963.5387/5183

Attorneys for Defendant
Capmark Finance Inc.

## <u>VERIFICATION</u>

I, Linda Pickles, am Defendant Capmark Finance Inc.'s ("Capmark") Executive Vice President and Chief Administrative Officer and am authorized to make this Verification on Capmark's behalf. I hereby verify that the factual information contained in Capmark's foregoing supplemental answers to Plaintiff's First Set of Interrogatories is true and correct to the best of my knowledge, information and belief, including information provided to me by other individuals. I understand that this verification is made subject to 28 U.S.C. § 1746, under penalty of perjury.

_____
Linda Pickles

Dated: January 25, 2008

## CERTIFICATE OF SERVICE

I, Michael J. Eagles, hereby certify that a true and correct copy of the foregoing

Defendant Capmark Finance Inc.'s Supplemental Answers and Objections to Plaintiff's First Set

of Interrogatories was served by hand delivery this 25th day of January, 2008 on:

> Katie R. Eyer, Esquire
> Salmanson Goldshaw, P.C.
> 1500 J.F.K. Blvd., Suite 1230
> Philadelphia, PA  19102

_____
Michael J. Eagles

# EXHIBIT
# C

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

WANDA JAMES SPEIGHT,   :CIVIL ACTION
                            :

    Plaintiff      :

                            :

        Vs.        :

                          :NO.  07-0890

CAPMARK FINANCE,    :

INC. and WILLIAM F.  :

ALDINGER, III,     :

                          :

        Defendant.   :


- - -


Oral Deposition of MICHAEL
LIPSON, taken pursuant to notice, held at
Two Penn Center, 1500 John F. Kennedy
Boulevard, Philadelphia, Pennsylvania
19102, on Thursday, February 21, 2007,
beginning at 10:00 a.m., before Kathleen
Murphy, Court Reporter-Notary Public, there
being present.

- - -


KAPLAN, LEAMAN AND WOLFE
Registered Professional Reporters
Constitution Place
325 Chestnut Street, Suite 909
Philadelphia, Pennsylvania 19106
(215) 922-7112

- - -

1 **Q.**        Okay.  How about Mr. Funk's

2 direct reports at that point?

3 A.        Tony Canniliere, Ken Kozck, I'm

4 sure there are some others.  There's about

5 40 people in that group, so I'm not going

6 to be that great on memory.

7 **Q.**        Okay.  Do you know whether

8 there's an organizational chart that would

9 show the names at that point in time?

10 A.        Absolutely.

11 **Q.**        Okay.  Do you recall,

12 approximately, when your last direct

13 contact was with Ms. Speight?

14 A.        No, I don't.

15 **Q.**        Any reason to believe it was past

16 mid April?

17 A.        I wouldn't have any recollection.

18 **Q.**        To what extent were you relying

19 on Mr. McCool to report back to you in

20 regard to Ms. Speight's attitude and

21 performance during the period from April to

22 her termination?

23 A.        He was a direct report and she

24 reported to him for that period of time.

1 Q.       Okay.  And so is it fair to say

2 that you were relying on his reports to you

3 on her performance?

4 A.       I would have relied on them, yes.

5 Q.       Do you recall whether he was

6 giving you any reports with regard to Ms.

7 Speight's performance?

8 A.       Yes.

9 Q.       What do you --

10 A.       As part of a general conversation

11 with regard to her progress on the

12 integration, we would have regular

13 meetings.

14 Q.       Were any notes taken during these

15 meetings?

16 A.       Typically not.

17 Q.       Do you know whether atypically

18 there were ever?

19 A.       I never take notes, so I don't

20 recall seeing anyone, nor did we have any,

21 you know, support in the meeting with that

22 function.

23 Q.       Meaning administrative support?

24 A.       Yes.

1 corporate objective and be part of that

2 team that put together the pieces in

3 achieving those objectives.

4 Q.      And did that manifest itself in

5 particular ways?

6 A.      We were not making any progress

7 as far as I could tell on the integration,

8 and I was hearing that -- besides the

9 proposal to move the majority of the assets

10 into the distress world, I didn't hear

11 anything else that was very constructive

12 or, you know, that added value to the

13 goals.

14 Q.      And is it fair to say that you

15 were relying on Mr. McCool to impart that

16 information to you or to be the messenger

17 of that information?

18 A.      It was his job.

19 Q.      Okay.

20       The second part of the answer

21 states that Ms. Speight was uncooperative.

22 Other than that to which you've already

23 testified, were there any additional ways

24 in which, or any independent ways aside

1 which Ms. Speight evidenced a lack of

2 cooperation?

3 A.        I believe so.

4 Q.        Okay.

5          And the last element in this

6 Answer to Interrogatories is that Ms.

7 Speight was terminated in part because of

8 her disrespectful conduct.

9          Mr. McCool specifically pointed

10 to the Email regarding the risk ratings.

11 Do you agree that Ms. Speight's Email or

12 Emails in regards to the risk ratings were

13 disrespectful?

14 A.        I could easily characterize them

15 as disrespectful in the organization and

16 her role in it.

17 Q.        Okay.  Other than the Email or

18 Emails related to the risk ratings, any

19 other ways in which Ms. Speight showed or

20 evidenced disrespectful conduct?

21 A.        Not that I have a direct

22 recollection of.

23 Q.        Now, can you tell me whether, at

24 some point, you considered whether Ms.

1 Speight should be counseled in regard to

2 her performance?

3 A.       Did I consider?

4 Q.       Yes.

5 A.       No, I did not.

6 Q.       And can you tell me on what

7 day -- let me ask this question; it is

8 correct that you were the one who

9 ultimately decided to terminate Ms.

10 Speight's employment, right?

11 A.       Yes.

12 Q.       Do you recall on what day you

13 made that decision?

14 A.       The day I was shown the risk

15 rating memo.

16 Q.       Just so we're clear, you mean the

17 Email?

18 A.       The Email.

19 Q.       Okay.

20          And prior to being shown the risk

21 rating Email, had you been considering

22 terminating Ms. Speight's employment?

23 A.       No.

24 Q.       Had you been considering any sort

1 of intervention by human resources with Ms.

2 Speight?

3 A.        No.

4 Q.        Is it fair to say that if Ms.

5 Speight had not sent the risk rating Email,

6 that she would not have been terminated at

7 that point?

8 A.        At that point?

9 Q.        Yes.

10 A.        Yes.

11 Q.        Why don't you tell me what you

12 recall about how you found out about the

13 Email from Ms. Speight?

14 A.        I don't have a specific

15 recollection.

16 Q.        Okay.  Mr. McCool testified in

17 his deposition that he actually brought the

18 Email to your office to discuss it with

19 you.  Any reason to believe that his memory

20 is not correct?

21 A.        It sounds very reasonable that he

22 would have either forwarded to me and then

23 walked in, or he brought it in, printed it

24 out already, either way.

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

WANDA JAMES SPEIGHT  :

                        :

      v.            :

                        :

CAPMARK FINANCE, INC.:

                        :

     and          :CIVIL ACTION NO:

                        :07-0890

WILLIAM F. ALDINGER, :

III                 :

- - -

FEBRUARY 8, 2008

- - -

Oral deposition of MARK McCOOL, taken pursuant to notice, was held at the law offices of SALMANSON GOLDSHAW, P.C., Two Penn Center, Suite 1230, 1500 J.F.K. Boulevard, Philadelphia, Pennsylvania, commencing at 10:00 a.m., on the above date, before Beth Strauss, a Federally-Approved Registered Reporter and Notary Public in the Commonwealth of Pennsylvania.

- - -

KAPLAN, LEAMAN AND WOLFE

Registered Professional Reporters

Constitution Place

325 Chestnut Street, Suite 909

Philadelphia, Pennsylvania 19106

(215) 922-7112

1 sound understanding of the functionality

2 of her analysts?

3      A.    I believe I did.

4      Q.    And do you recall what that

5 concern had been based on?  Was that on

6 prior meetings or emails or a combination

7 thereof?

8      A.    Yes, it would be a

9 combination thereof, certainly meetings.

10          MR. SALMANSON:  Let's mark

11      this as P-3.

12              -  -  -

13          (Capmark's Supplemental

14      Answers and Objections received

15      and marked as P-3 for

16      Identification.)

17              -  -  -

18 BY MR. SALMANSON:

19      Q.    I'm showing you what has

20 been marked as P-3 which is Defendant

21 Capmark Finance, Inc.'s Supplemental

22 Answers and Objections to Plaintiff's

23 First Set of Interrogatories.

24          If you turn to the second

1 page, interrogatory number 1 says,

2 "Please describe in detail each and every

3 legitimate non-discriminatory reason that

4 you contend motivated the termination of

5 Ms. Speight."  And the answer is, "Ms.

6 Speight's employment was terminated

7 because of her unprofessional,

8 uncooperative and disrespectful conduct."

9          Do you agree with the

10 statements that her employment was

11 terminated because of her unprofessional,

12 uncooperative and disrespectful conduct?

13      A.    Yes, I do.

14      Q.    Okay.  Tell me each way that

15 you believe Ms. Speight's conduct was

16 unprofessional.

17      A.    My mind goes to the meeting

18 that you referred to earlier.  I believe

19 you said May 23rd, but there are other

20 examples as well.

21              Unprofessional, I would say

22 is -- Wanda was a senior manager within

23 the company.  I think we are expected to

24 understand the various responsibilities

1 that we manage within the department.  I

2 don't believe that she had that

3 understanding at a general or a granular

4 level.

5            The manner in which she

6 answered my questions regarding morale

7 was unprofessional, uncooperative and

8 disrespectful, and I believe that the

9 manner in which she drafted the email

10 regarding the Canadian loans was again

11 unprofessional, uncooperative and

12 disrespectful.

13     Q.    I want to go back because

14 you basically gave two specific examples.

15 One related to her answers regarding the

16 morale and the second regarding the

17 Canadian loan.

18            Can you provide me with any

19 other specific examples in which you felt

20 Ms. Speight was unprofessional,

21 uncooperative and disrespectful?

22            MR. EAGLES:  I'm going to

23        object to the form.

24            I think you've

1      mischaracterized the testimony

2      with respect to the number of

3      examples.

4 BY MR. SALMANSON:

5      **Q.**    You can answer if you can.

6      A.    Could I have the question

7 back please?

8                -  -  -

9           (Whereupon, the court

10     reporter read the requested

11     portion of the record.)

12               -  -  -

13 BY MR. SALMANSON:

14     **Q.**    Let me rephrase my question.

15          You've given three examples

16 actually.  You said -- the three specific

17 examples, one of which was her lack of

18 understanding, that either the general or

19 granular level was unprofessional, right?

20     A.    Yes.

21     **Q.**    And you would limit that

22 lack of understanding as to

23 unprofessional as opposed to

24 uncooperative or disrespectful?

1       A.    Well, I would say, you know,

2  the inability to answer the questions

3  would also be uncooperative.

4       Q.    Well, if she genuinely

5  didn't have an understanding, that's not

6  a lack of cooperation, correct?

7       A.    I would agree.

8       Q.    Okay.  And it was your

9  belief that she genuinely had a certain

10  lack of understanding as opposed to just

11  holding back and delivering that

12  understanding of the functionalities of

13  the people?

14           MR. EAGLES:  Objection to

15       the form.

16  BY MR. SALMANSON:

17       Q.    You can answer.

18       A.    I don't know how I can

19  answer that question, but I would say

20  during the time if you're looking -- we

21  are jumping around here, but if you're

22  looking for another example, I believe --

23       Q.    Well, I really want to make

24  sure that we get down each of the

1 specific things that you think feed into

2 the answer.

3      A.    Okay.

4      Q.    So I do want to try and keep

5 it focused to whether you believe that

6 she had a genuine lack of understanding

7 or whether, in fact, you thought she was

8 deliberately not sharing her

9 understanding.

10          So my question to you as you

11 sit here today is, do you believe it was

12 one versus the other, some of both?

13     A.    I believe initially my

14 impression was that it was a lack of

15 understanding, and eventually I came to

16 believe it was both, that she did not

17 understand and that she was

18 uncooperative.

19     Q.    And when did you eventually

20 come to the belief that it was both?

21     A.    It was all within a week or

22 two at the end of May.

23     Q.    Okay.  The second example

24 you gave was Wanda's response to your

1 questions in regard to morale.

2           Did you have more than one

3 discussion with her in regard to the

4 morale of her subordinates?

5      A.    I don't recall how many

6 discussions about the morale I had.

7      Q.    Do you recall a particular

8 discussion or discussions in which you

9 thought her responses were

10 unprofessional, uncooperative and

11 disrespectful?

12      A.    Yes, I do.

13      Q.    And when did those occur?

14      A.    The date you provided

15 earlier was May 23rd, so I believe it's

16 that day.

17      Q.    Okay.  And maybe we could

18 just refer to the -- if we're talking

19 about that meeting, we can refer to it as

20 the drill-down meeting so that we're both

21 on the page; is that fair?

22      A.    That's fine.

23      Q.    So it was in that drill-down

24 meeting was the specific conversation you

1  had about morale?

2      A.    Yes.

3      **Q.**    Do you recall any other

4  discussions other than the drill-down

5  meeting in which Ms. Speight's

6  discussions about the morale in her

7  department was either unprofessional,

8  uncooperative or disrespectful?

9      A.    As it relates to morale?

10     **Q.**    Yes.

11     A.    No, I don't.

12     **Q.**    The third example you gave

13  was the email in regards to the Canadian

14  loan portfolio.

15            Was there one particular

16  email that you thought was

17  unprofessional, uncooperative and

18  disrespectful or more than one email in

19  that regard?

20     A.    I really recall one in

21  particular.

22     **Q.**    And that was the email

23  that you printed out and brought to

24  Mike Lipson?

1      A.    Correct.

2      Q.    Other than the examples that

3 you've provided, as you sit here today,

4 can you think of any other specific

5 examples in which Ms. Speight was

6 unprofessional, uncooperative or

7 disrespectful?

8      A.    Yes.

9      Q.    And what other examples?

10     A.    Another question I had asked

11 her was -- I don't recall the detail of

12 the question, but it was asking her

13 opinion on something.

14     Q.    Was that also in the

15 drill-down meeting?

16     A.    I believe it was.

17     Q.    Are there any other examples

18 that you can think of as you sit here

19 today?

20     A.    No.  I guess my first point

21 should have been that the answer she

22 provided, not my question, the answer

23 provided by Wanda being that -- I don't

24 recall specifically what was stated, but,